**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THOMASON & KENNEDY ENTERPRISES, INC., d/b/a TK TIRE & AUTO and d/b/a TK OUTDOOR PARTS,<br><br>Plaintiff,<br><br>v.<br><br>RUSSO HARDWARE, INC., d/b/a EPR DISTRIBUTION and d/b/a RUSSO POWER EQUIPMENT,<br><br>Defendant. | **Civil Action No. ______________**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Thomason & Kennedy Enterprises, Inc., doing business as TK Tire & Auto and as TK Outdoor Parts ("TKE"), by and through its attorneys, brings this action for declaratory judgment and for injunctive relief against Defendant Russo Hardware, Inc., doing business as EPR Distribution and as Russo Power Equipment, to resolve an actual, immediate, and justiciable controversy arising under the trademark laws of the United States, and further involving state law claims which are so closely related to the Lanham Act claim that they form part of the same case and controversy under Article III, and accordingly are within the supplemental jurisdiction of this Court. Moreover, the circumstances of this case, including the nature of the original complaint submitted to Amazon and refusal to take remedial action, make this an exceptional case and attorney's fees and punitive damages are requested.

Plaintiff, as its Complaint against Defendant alleges as follows:

## THE PARTIES

1. Plaintiff Thomason &Kennedy Enterprises, Inc. ("TKE") is a corporation created under the laws of Georgia and having its principal place of business at 1041 Fairground Rd., Madison, GA, 30650 USA. Plaintiff TKE is in the business of selling automotive products, tools and related products, including mowers, mower parts, air filters and other products. TKE markets its products in the United States through Amazon and other channels of trade.

2. TKE is an authorized dealer of Rotary Corporation ("Rotary") and purchases Rotary branded product directly from Rotary. Rotary Corporation is a highly respected, premier player in the aftermarket parts market, recognized specifically as the world's largest supplier of aftermarket outdoor power equipment (OPE) parts and accessories. The product at issue in this lawsuit were genuine Rotary-branded aftermarket replacement air filters.

3. Upon information and belief, Defendant Russo Hardware, Inc is a corporation organized and existing under the laws of the State of Illinois and having a place of business at 9525 W. Irving Park Road, Schiller Park, Illinois 60176. Defendant is listed as the owner of record on U.S. Trademark Registration No. 8,007,484 ("the '484 Registration"), which is directed to the alleged trademark EPR DISTRIBUTION. Defendant sells a variety of products including mowers, mower parts, air filters and related products. Defendant markets its products in the United States through Amazon and other channels of trade.

4. Defendant, by means of the malicious acts complained of herein, has effectively terminated TKE's business on Amazon, which, until those acts, had product sales of $3,691,000 million dollars on Amazon in the twelve months beginning August 1, 2025. More particularly, Defendant, taking unfair advantage of errors in three listings on the Amazon website (involving total sales of under $100), accomplished this through the use of false accusations of trademark

infringement (and most seriously counterfeiting), more particularly a completely false accusation that Plaintiff's product bore a counterfeit of the EPR DISTRIBUTION trademark. This fictitious charge of counterfeiting was made to avoid the normal scrutiny by Amazon before taking action. Rather, because of the seriousness of the counterfeiting charge, Amazon procedures result in automatic delisting and minimally supervised automatic shutting down of Amazon seller business accounts. The accusation was made by Defendant through 1) the misuse of Amazon procedures meant for cases of bona fide trademark infringement, 2) falsely citing a US trademark registration unrelated to the product at issue, and 3) falsely making a charge of counterfeiting for the purpose of avoiding scrutiny by Amazon, 4) even after Defendant saw the product which had only genuine trademark markings of Rotary. The accusation was knowingly false, because Defendant itself purchased and received the goods before it reported them, and knew or could not have avoided knowing that they were genuine product from Rotary Corporation (a competitor of Defendant), in Rotary packaging bearing Rotary's mark and bearing no marking of Defendant's allegedly counterfeited EPR DSTRIBUTION trademark or anything of the sort or any other marking likely to cause confusion with Defendant's EPR DSTRIBUTION trademark. Nevertheless, Defendant asserted the infringement of the trademark EPR DSTRIBUTION of the '484 Registration against TKE's genuine goods and reported those goods to Amazon in the counterfeit category citing alleged rights under Defendant's '484 Registration. Defendant's acts and omissions are in violation of rights of TKE under intellectual property, competition and other laws, and the same constitute part of the actual controversy in this action. Moreover, Defendant asserted the '484 Registration for the trademark EPR DSTRIBUTION with respect to three Amazon marketplace online procedures against TKE's goods, falsely reporting TKE's goods as counterfeit goods, implicating 15 U.S.C. 1114(1)(a) in the alleged violation of the alleged trademark rights of Defendant.

5. TKE is an authorized dealer of Rotary Corporation and purchases Rotary product directly from Rotary under customer account number 712060. Rotary Corporation is a manufacturer and distributor of aftermarket replacement parts for outdoor power equipment. It was founded in 1957 in southeastern Georgia and operates today from its principal facility in Glennville, Georgia, across eight facilities comprising nearly one half million square feet, with more than five hundred employees and customers in all fifty states and in more than sixty eight countries. The goods TKE offered under the accused listings are Rotary item 12328, an air filter for Makita power cutters, which TKE purchased from Rotary on Rotary invoice IN29036384 dated November 19, 2025, and which TKE shipped in Rotary's factory sealed retail packaging bearing Rotary's mark, Rotary part number 39-12328, UPC 0 34761 12328 9, and Rotary's corporate address. Nothing on the goods, on the packaging, on the label or on any insert bore the mark EPR DISTRIBUTION or anything resembling it. On June 5, 2026, before any of the events complained of, Rotary confirmed in writing that TKE is an active Rotary dealer in good standing and that Rotary does not control, monitor, authorize or restrict the channels through which its dealers resell, including Amazon.

6. The goods at issue are consumable air filters for Makita brand power cutters. Filters of this kind are wear items. They are replaced in the ordinary course of operating the tool, and they are supplied by a number of aftermarket manufacturers and distributors, Rotary Corporation and Defendant among them. Amazon requires every seller of a given item to offer that item from a single product detail page. A seller with the same part does not create its own page. It adds its offer to the page that already exists.

7. Plaintiff searched the Amazon catalogue for the Rotary part it stocked, item 12328, and selected detail pages returned by that search. Those pages, ASIN B0D8BW1BLF and ASIN

B0D8BVWXLT, had been created by Defendant and upon information and belief including references to the genuine product shipped by Plaintiff and at issue in this lawsuit. Neither page was restricted when Plaintiff selected it. Amazon permitted any seller offering the same part to add an offer, and Plaintiff added its offers openly, under its own seller name, with its own inventory, sourced from Rotary. The pages Plaintiff selected did not in fact correspond to the Rotary part Plaintiff stocked. That mismatch was corrected before reaching $100 in total sales, half of them placed by Defendant.

8. Defendant did not act in ignorance. Defendant purchased two units from Plaintiff and received them before it filed its complaint. Defendant asserted a registration whose identification of goods does not reach an air filter for a power cutter. Of the categories Amazon's reporting form offers, Defendant selected counterfeit, the most severe. Defendant reported the entire product detail page rather than the offer it complained of. Defendant then refused six written requests and repeated telephone requests to withdraw, told Plaintiff through its own manager that it would not retract because it would then have to retract against the other sellers it had reported and that this was its strategy for dealing with Amazon sellers, ignored a written demand served on the attorney of record for its own registration, and removed its own offers from the accused pages so that its goods could not be compared against the standard it had invoked, in a misguided exfoliation effort.

9. Defendant then reported Plaintiff's offers to Amazon as counterfeit. After the report, the same detail pages carried no third party offers at all, Amazon applied listing limitations to them, and Defendant withdrew its own offers from the pages as well. Defendant built these pages as open pages, used them to draw a competitor's offers, and then closed them to everyone, including itself.

10. While the false accusation made by Defendant related to only a single product offered on two Amazon listing pages, the calculated and intended effect of Defendant's actions was to seriously impact TKE's entire business, and was implemented by Defendant because Defendant and TKE compete in a wide range of areas and it was Defendant's intention to damage its competitor, TKE, and thus obtain an unfair competitive advantage over TKE. Such impact on the entire business of TKE was to be expected on account of the largely automated and minimally supervised procedures used by Amazon to administer rights owner complaints, meant by Amazon only for counterfeits, and which do not guard against the multiple misrepresentations made by Defendant to Amazon in this matter.

11. Most importantly, Amazon does not confine the consequences of such a complaint to the listing complained of. The complaint is recorded against the seller's account. Each recorded violation reduces the seller's Account Health Rating, and a rating that falls far enough results in deactivation of the entire selling account, the suspension of every listing on it, and the withholding of all funds in it. That is what occurred here. Within three days of Defendant's complaint of July 18, 2026, TKE's Account Health Rating had fallen below 100 and Amazon issued a notice warning of account deactivation. TKE's sales ceased after August 14, 2026. On September 2, 2026, Amazon deactivated TKE's selling account in its entirety. TKE's Account Health Rating now stands at zero, and Amazon holds $123,296.78 of TKE's sale proceeds with $0.00 available for disbursement. The two listings Defendant complained of had produced, over their entire commercial history from January 2025, twenty customer sessions, four units ordered and ***a total of $81.96 in sales***, and two of those four units were purchased by Defendant itself. This compares to the total sales of ***$3,691,000.00*** in product sales in TKE's account, now closed down by Defendant, for the twelve months beginning August 1, 2025.

12. Moreover, the effects of acts as complained of herein can have long-term adverse consequences on Amazon sellers such as TKE. A policy violation remains recorded on a seller's Account Health page for 180 days and continues to affect the seller's standing on the marketplace throughout that period, whether or not the underlying complaint is withdrawn. A listing that is removed and later restored does not return to the position it held: it loses its sales rank, its search placement and its share of the Buy Box, each of which is built over years of trading and none of which can be purchased back. Amazon's notice of July 18, 2026 further provides that after sixty days the Fulfillment by Amazon inventory associated with the affected listings is treated as unsuitable and becomes subject to required removal. Sixty days from July 18, 2026 expires on September 16, 2026, after which ***TKE's inventory held against those listings is subject to destruction***. Funds withheld on a deactivated account are not released while the deactivation stands, so a seller that meets payroll and supplier obligations out of its Amazon proceeds must meet them out of reserves instead. A seller whose account is deactivated cannot fill orders at all, and so loses the customer relationships and the supplier terms that depend on its ability to do so. None of these consequences is repaired by a later withdrawal of the complaint that caused them.

## JURISDICTION

13. Jurisdiction is founded on the existence of a federal question arising under the Lanham Act, more particularly for trademark infringement under the Trademark Act of 1946, 15 U.S.C. §§ 1121, 1114, and 1116(d), pursuant to 28 U.S.C. § 1331(a), and §§ 1332 and 1338 (a), as hereinafter more fully appears herein.

14. This Court has subject matter jurisdiction over this action on the separate and independent ground of 28 U.S.C. § 1332(a)(1), because the action is between citizens of different

States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15. Plaintiff is a citizen of the State of Georgia. Plaintiff is incorporated under the laws of the State of Georgia and its principal place of business is at 1041 Fairground Road, Madison, Georgia.

16. Defendant is a citizen of the State of Illinois. Defendant is incorporated under the laws of the State of Illinois and, upon information and belief, its principal place of business is in the State of Illinois. Complete diversity of citizenship therefore exists, and no party is a citizen of the same State as any opposing party.

17. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Amazon.com presently withholds $123,296.78 of Plaintiff's sale proceeds in consequence of Defendant's conduct, and that sum alone exceeds the jurisdictional threshold. Plaintiff further seeks damages for lost sales (presently, upon information and belief, amounting to approximately $300,000 with profits well in excess of $75,000) on a selling account that generated $3,691,000 in product sales in the twelve months beginning August 1, 2025 and on which daily product sales have fallen to zero, and for injury to its business reputation and goodwill. Plaintiff also seeks injunctive relief, the value of which is the restoration of that selling account.

18. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III. In the alternative, this Court has original jurisdiction over those claims under 28 U.S.C. § 1332(a)(1).

19. An actual and justiciable controversy of sufficient immediacy and reality exists between Plaintiff and Defendant. Defendant has asserted U.S. Trademark Registration No.

8,007,484 against specifically identified goods of Plaintiff, has represented to Amazon.com that those goods bear a counterfeit of its EPR DSTRIBUTION mark and allegedly violate Defendant's alleged rights in the '484 Registration ad the trademark EPR DSTRIBUTION, and has obtained the removal of Plaintiff's listings and the deactivation of Plaintiff's selling account based upon the allegation of alleged rights in the '484 Registration and the trademark EPR DSTRIBUTION. Plaintiff maintains that its goods are not counterfeit and do not infringe any mark or other right of Defendant.

20. The controversy is neither hypothetical nor contingent on any future event. Defendant has already acted, the consequences of that action have already occurred and continue, Plaintiff has asked Defendant six times in writing and repeatedly by telephone to withdraw the assertions, Defendant has refused, and a manager of Defendant told Plaintiff that Defendant would not issue a retraction because the complaint was part of Defendant's plan for dealing with Amazon sellers.

21. This Court has personal jurisdiction over Defendant. Defendant is incorporated in Illinois, maintains a registered agent in Illinois for service of process, and, upon information and belief, maintains its principal place of business in Illinois and conducts continuous and systematic business in Illinois and in this District. Defendant is accordingly at home in this forum.

22. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## INTRODUCTION

23. Every product sold on Amazon has a unique number assigned to it; that number is referred to as an ASIN (Amazon Standard Identification Number). Typically, a number of vendors

selling the same product will use the same ASIN. The use of the same ASIN facilitates Amazon marketplace mechanisms which favor more competitive sellers.

24. The Amazon procedures at issue in this lawsuit are web-based applications meant to effect the removal from the Amazon platform of products which constitute trademark infringement, and more particularly, albeit misused in this case, involving allegedly counterfeit products.

25. The procedure involved here, upon information and belief, involved the Defendant going online, and falsely reporting to Amazon that products of TKE having two different ASIN numbers were counterfeit versions of two products sold by Defendant, under ASINs B0D8BW18LF and BOD8BVWXLT.

26. More particularly, upon information and belief, on or about July 18, 2026, Defendant, acted maliciously and in bad faith and intending to harm TKE and its business both in the long-term and the short-term, executed the acts detailed below, or substantially the same, or the equivalent thereof.

27. Over the Internet, Defendant went to the Amazon Brand Registry Portal and navigated to click on the "Protect" tab and select "Report a Violation". It then located Plaintiff's two products and copied each ASIN and pasted them into the tool's search bar. It then targeted TKE by selecting TKE's offer.

28. Defendant then deleted TKE's entire product detail page for both products by checking the box for "Report the entire listing".

29. Defendant then designated the infringement type as trademark infringement, asserting a claim that its trademark rights, under the '484 Registration of the trademark EPR

DISTRIBUTION, which it cited in this report Amazon, were violated by the products on the product detail page.

30. Defendant then specifically choose "Counterfeit" on the Amazon website page, falsely making an accusation that the products were counterfeit. It then entered the registration number for registered United States trademark registration (the ‘484 Registration) as a “proof” of Defendant’s alleged rights, and then, upon information and belief, entered some false explanation as toward why the subject products were alleged to be fake. It then clicked the “Submit” link. In this manner it misused and gamed the vulnerabilities of the Amazon system.

31. Typically, such actions result in product delisting within 12 to 24 hours. In the present case, upon information and belief, the resulting delisting had received nonexistent or at best minimal review by Amazon. Such actions constituted of Defendant constituted an intentional attempt to injure TKE, and to misuse the web-based process provided by Amazon, as will become apparent from the detail provided below.

32. Defendant has alleged that it owns U.S. Trademark Registration No. 8,007,484 for the alleged trademark EPR DISTRIBUTION. The registration issued on November 4, 2025 on application Serial No. 98/200,560, filed September 27, 2023. The accusations made by Defendant relating to infringement of that trademark registration are false.

33. Defendant submitted its first complaint to Amazon.com, substantially following the procedure detailed above, on July 18, 2026. The complaint was given Complaint ID 21178046031, asserting that Plaintiff’s listing page offers under ASINs B0D8BW1BLF and B0D8BVWXLT were counterfeit, as detailed above. On July 29, 2026, Defendant submitted a second complaint, Complaint ID 21367266101, asserting that a third listing was counterfeit.

34. The complaints are evidenced by Amazon notifications. See, for example, Exhibit 1, a complaint notification sent to TKE by Amazon, listing ASINs B0D8BW1BLF and BOD8BVWXLT. The notification reflects Defendant's assertion of US Trademark Registration No. 8,007,484 directed to the trademark EPR DISTRIBUTION (Exhibit 2). The notification of Exhibit 1 also specifically identifies the product as a "Counterfeit" and infringing "Trademark" rights which were "asserted" by Defendant on the basis of the '484 Registration.


amazon seller central | TK Outdoor Parts | United States

Search

New Seller Central EN Help

Add Products Explore Services A-to-z Guarantee Claims Manage Seller Fulfilled Returns 3P Apps Edit

< Performance notifications

July 18, 2026

**Notice: Policy Warning**

amazon

Subject = Listings deactivated due to inauthenticity notice

Hello ,

Some of your listings on Amazon.com have been reported to offer inauthentic products. Address these product authenticity issues to avoid impact to your account. Review the following for affected listings and next steps.

Why is this happening?
We are taking this action because we received a report from a rights owner that some of your listings may offer inauthentic products. Our authenticity policy requires all products sold on Amazon to be genuine to ensure a safe and trustworthy shopping experience. Selling inauthentic products is prohibited.

To learn more, review our "Anti-Counterfeiting Policy:"
https://sellercentral.amazon.com/gp/help/G201165970

Affected listings:
ASIN: B0D8BW1BLF
B0D8BVWXLT
Infringement type: Counterfeit
Trademark asserted: 8007484

How do I reactivate my listings?
Based on your account health performance and history, you may be eligible to request the removal of this violation. Review your eligibility on your Account Health page:
https://sellercentral.amazon.com/performance/account/health/product-policies

Have your listings been deactivated in error?
If you believe that your listings have been deactivated in error, submit documentation such as invoices or letters of authorization or provide details such as Amazon order IDs that demonstrate the authenticity of your products. You can submit this documentation through your Account Health page:
https://sellercentral.amazon.com/performance/account/health/product-policies

Alternatively, contact the rights owner to request a retraction of their notice. Only retractions submitted directly to Amazon by the rights owner will be accepted.
Contact information for the rights owner:
-- John Sopala
-- jsopala@russopower.com
-- Complaint ID: 21178046031

What happens next?
This violation will remain on your Account Health page for 180 days from the posting date unless you successfully appeal this decision or demonstrate that these listings were flagged in error. Deleting your listings will not remove this violation from your Account Health page.
After 60 days, any Fulfillment by Amazon inventory associated with these listings will be considered "unsuitable units" under our fulfillment center policies and must be removed. Removal fees will apply, and removal orders cannot be cancelled once initiated. To learn more about required removals, go to our "Required Removals" help page:
https://sellercentral.amazon.com/help/hub/reference/external/202000820

We're here to help
For additional questions or support, contact Selling Partner Support:
https://sellercentral.amazon.com/help/center

For more information on letters of authorization, visit the "Letter of Authorization" page:
https://sellercentral.amazon.com/help/hub/reference/external/GUF78PCXAMHDY2A6

Amazon Services

FEEDBACK ×

Help | Program Policies | English | Download the Amazon Seller mobile app

© 1999-2026, Amazon.com, Inc. or its affiliates

Exhibit 1 – Policy Warning Notice from Amazon

35. As can be seen from Exhibit 2, the '484 Registration, cited by Defendant relates to trademark rights in the alleged trademark EPR DISTRIBUTION. Accordingly, violation of those rights must involve use of the alleged trademark EPR DISTRIBUTION.

36. Attached as Exhibit 3, is a copy of the Amazon listing description page associated with ASIN B0D8BW1BLF. The listing does not use the words "EPR Distribution" or anything confusingly similar thereto or anything of the sort.




Exhibit 3 – Amazon Product Listing for ASIN B0D8BW1BLF

37. The allegation of infringement against TKE's product listing, ASIN B0D8BW1BLF, was false, malicious, in bad faith, and done with an intent to damage TKE and its business.

38. Exhibit 4 is a photograph illustrating the front and back of the product sold by TKE under ASIN B0D8BW1BLF, together with the packaging associated therewith. Neither the product nor the packaging uses the words "EPR Distribution" or anything confusingly similar thereto or anything of the sort.




Exhibit 4 – Rotary product sold by TKE under ASIN B0D8BW1BLF

39. The allegation of infringement respecting TKE's product made to Amazon over the Amazon website with respect to ASIN B0D8BW1BLF was false, malicious, in bad faith, and done with an intent to damage TKE and its business.

40. Attached as Exhibit 5, is a copy of the Amazon listing description page associated with ASIN B0D8BVWXLT. The listing does not use the words "EPR Distribution" or anything confusingly similar thereto or anything of the sort.




Exhibit 5 – Amazon Product Listing for ASIN B0D8BVWXLT.

41. The allegation of infringement against TKE's product listing, ASIN B0D8BVWXLT, was false, malicious, in bad faith, and done with an intent to damage TKE and its business.

42. Once again, Exhibit 4, mentioned above, represents the front and back of the product sold by TKE under ASIN B0D8BVWXLT, together with the packaging associated therewith. Neither the product nor the packaging use the words "EPR Distribution" or anything

confusingly similar thereto or anything of the sort. The product clearly bears the "ROTARY" trademark, and is an original, genuine product made by Rotary, and distributed by Plaintiff with the approval of Rotary.

43. Defendant has wrongfully accused Plaintiff of counterfeiting and has committed other acts of unfair competition, including misusing and weaponizing the rights owner complaint procedures that Amazon.com provides for meritorious intellectual property claims, and has thereby shut down Plaintiff's business on Amazon.com, affected, in particular, through the explicit and knowingly false accusation of "counterfeit" goods. Plaintiff sold genuine Rotary Corporation replacement parts under the subject listings, purchased directly from Rotary Corporation under a written authorization and shipped in Rotary's own sealed retail packaging. Plaintiff never applied Defendant's mark to any product, package, label, invoice, or advertisement, and the words EPR and EPR DISTRIBUTION appeared nowhere on anything Plaintiff shipped.

44. Nor does Defendant's registration reach the accused goods. Its identification in International Class 007 is a closed list that omits air filters. There is therefore no counterfeit mark within the meaning of 15 U.S.C. § 1116(d)(1)(B)(i), and no likelihood of confusion between anything Plaintiff sold and anything Defendant sells.

45. Defendant nevertheless refused to withdraw its complaints when Plaintiff asked it to do so, and continues to assert its rights against Plaintiff. A substantial controversy accordingly exists between parties having adverse legal interests, of sufficient immediacy and reality to warrant declaratory relief. Defendant's conduct has caused Plaintiff's listings to be removed, its seller account to be deactivated, and its sale proceeds to be withheld, and has placed a cloud over Plaintiff's standing on the platform, its customer relationships, and its supplier relationships. Plaintiff therefore seeks a declaration that its sourcing, offering, sale, advertising, and promotion

of the products in the Amazon product listing pages at issue do not infringe any rights of Defendant Russo, and further that the same are genuine Rotary Corporation replacement parts, and not counterfeits or infringements of any product or trademark right held by Defendant, and that Defendant's asserted registration confers no right to the enforcement it has obtained on the Amazon platform.

## FACTUAL BACKGROUND

### *A. TKE and the goods it sells*

46. Plaintiff is a family owned business in Madison, Georgia. It sells replacement parts for outdoor power equipment, partially parts manufactured or distributed by Rotary Corporation, and it sells them at retail and through the Amazon.com marketplace.

47. Rotary Corporation is a manufacturer and distributor of aftermarket replacement parts and accessories for outdoor power equipment, with its principal facility in Glennville, Georgia. According to Rotary's published company history, the business was founded in 1957 by J.D. Harvey, who began by selling replacement parts to automotive parts stores and lawn mower dealers in southeastern Georgia. Rotary today operates eight facilities comprising nearly one half million square feet, employs more than five hundred people, selling products nationwide.

48. Plaintiff purchases Rotary product directly from Rotary Corporation as an authorized dealer under customer account number 712060.

49. On June 5, 2026, Rotary Corporation issued a letter signed by Katey Waters of Sales Administration confirming that TK Tire & Auto, account 712060, is an active Rotary dealer in good standing purchasing Rotary products directly from Rotary Corporation, and confirming that Rotary does not control, monitor, authorize or restrict the resale channels or platforms,

including Amazon, used by its dealers. A true and correct copy of that letter is attached as Exhibit 6.

50. The product Plaintiff offered under ASINs B0D8BW1BLF and B0D8BVWXLT is Rotary item number 12328, an air filter for Makita power cutters. Rotary's published description reads: "AIR FILTER FOR MAKITA. Item #12328. Air Filter replaces Makita 424789-0, 315-173-010 Power Cutter. Fits models EK6101 and PC-6114."

51. Plaintiff purchased the units it sold under those ASINs directly from Rotary Corporation. Rotary Corporation invoice IN29036384, dated November 19, 2025, records at line 103 the purchase of vendor part 12328, described as "AIR FILTER FOR MAKITA." A true and correct copy of that invoice is attached as Exhibit 7.

52. Plaintiff shipped the units in Rotary's factory sealed retail packaging, bearing Rotary's mark, part number 39-12328, UPC 0 34761 12328 9, and Rotary's corporate address. Nothing on the product, the packaging, the label or any insert bore the mark EPR DISTRIBUTION or any variation of it.

***B. How the Amazon rights owner complaint system operates***

53. Amazon.com operates a notice system through which a person claiming to own an intellectual property right may submit a complaint identifying a listing and asserting that the listing infringes that right.

54. The system is self executing in practical operation. Amazon acts on a complaint upon receipt. It does not adjudicate the merits of the assertion before acting, and it does not require the complainant to demonstrate that the asserted registration covers the accused goods.

55. Amazon's reporting form requires the complainant to select a category of alleged infringement. The available categories differ materially in consequence. A complaint alleging that

a listing is inaccurate or that a seller has matched an offer to the wrong detail page is treated as a listing or detail page matter. A complaint alleging “counterfeiting” is treated as a violation of Amazon’s most serious policies and carries consequences at the level of the seller’s entire account, not merely the listing.

56. A seller who believes a complaint is mistaken is directed by Amazon’s notice to contact the rights owner directly and request a retraction. Amazon’s notice identifies the rights owner as the party who must submit any retraction, and identifies addressing the notice with a retraction submitted by the rights owner as a document Amazon will accept in resolution of the complaint.

57. Because ***Amazon acts before it examines***, the system can be used to remove a competitor from the marketplace on an assertion that would not survive examination. Multiple requests have more serious consequences. That is what occurred here.

**C. Defendant and the asserted registration**

58. Defendant Russo Hardware, Inc. sells replacement parts for outdoor power equipment through the Amazon.com marketplace under the name EPR Distribution, and operates retail outdoor power equipment locations under its assumed name Russo Power Equipment. Defendant is a competitor of Plaintiff.

59. Defendant is the owner of record of U.S. Trademark Registration No. 8,007,484 for the mark EPR DISTRIBUTION in standard characters. The word DISTRIBUTION is disclaimed.

60. Neither Plaintiff nor Defendant manufactures the air filters at issue. Plaintiff sells filters that Rotary Corporation catalogues, packages and supplies under Rotary's own part number and trademark. Upon information and belief, Defendant is a distributor and retailer of outdoor power equipment parts and does not manufacture air filters, and the EPR DISTRIBUTION mark

that Defendant applies to air filters is a private label applied to goods Defendant acquires from others. Defendant's mark on such a filter identifies the party that resold the filter and not the party that made it. Plaintiff sought to purchase Defendant's own filter in order to better understand the issues in this matter, but was unable to do so because Defendant had removed its offers from the accused detail pages.

## D. What the registration covers, and what it does not

61. Under 15 U.S.C. § 1116(d)(1)(B)(i), a counterfeit mark is a spurious mark that is identical with, or substantially indistinguishable from, a mark registered on the principal register "for such goods or services sold, offered for sale, or distributed" and in use.

## E. Plaintiff's offers, the detail pages, and Plaintiff's cataloguing failure

62. Owners of power cutters, including Makita brand power cutters, must periodically replace consumable parts, among them the air filters that collect the fine cuttings the tool produces. Parts of that kind are supplied by aftermarket manufacturers and distributors, including Rotary Corporation and Defendant. Plaintiff sells replacement parts manufactured by Rotary Corporation. Defendant sells replacement parts that it sells, perhaps sometimes branded with its EPR DISTRIBUTION mark, though this is not clear. ASINs B0D8BW1BLF and B0D8BVWXLT were detail pages that already existed in the Amazon catalogue when Plaintiff first offered goods on them. Upon information and belief, Defendant created both pages. Plaintiff created neither page. Amazon requires a seller offering an item already in the catalogue to add its offer to the existing detail page for that item rather than create a new page, and the pages Defendant created were configured, by Defendant, intentionally to permit exactly that, presumably for reasons associated with the characteristics of the Amazon marketplace. To the best of its recollection, Plaintiff

searched the Amazon catalogue for Rotary Corporation item 12328. The search returned one or more detail pages, among them the two pages identified above. Plaintiff selected those pages and added its offers to them. Neither page was restricted at the time. Neither was closed to sellers other than Defendant, and neither displayed any notice limiting who could offer goods from it, and that was consistent with Defendant's intentions when it set up the page. Plaintiff added its offers openly, under its own seller name and with its own inventory. The pages Plaintiff selected did not correspond to the Rotary Corporation part Plaintiff stocked. That mismatch was an error. It produced fewer than $100 in total sales, half of them purchases made by Defendant, before Plaintiff shut it down. Defendant thereafter reported Plaintiff's offers on both pages to Amazon. After that report, Amazon applied listing limitations to both detail pages, neither page displayed any offer from any third party seller, and Defendant withdrew its own offers from both pages.

**<u>F. Defendant's purchase, and the complaint that followed</u>**

63. On June 29, 2026 at 1:58 p.m. Pacific time, Amazon order 111-3139075-4031444 was placed with Plaintiff. The order contained three line items, including one unit of ASIN B0D8BVWXLT and one unit of ASIN B0D8BW1BLF. The order total was $96.96.

64. Plaintiff shipped that order on June 30, 2026 by FedEx Ground Economy under tracking number 382346997705. The order was shipped to 1001 North Randall Road, Elgin, Illinois 60123-2319.

65. Amazon's Business Reports for ASINs B0D8BVWXLT and B0D8BW1BLF, covering January 2025 to date, record the entire commercial history of both listings: twenty customer sessions, four units ordered, and $81.96 in ordered product sales.

66. At the time Defendant selected the counterfeit category in filing its complaint with Amazon, defendant knew the goods bore no EPR DISTRIBUTION marking of any kind.

**G. What Defendant itself sells**

67. After the complaint was filed, Plaintiff sought to purchase the accused item from Defendant in order to better understand what happened. Plaintiff was unable to do so, because Defendant's offer for the item was no longer available. Defendant removed the listings in the products in order to prevent Plaintiff from ordering the product from the mistakenly identified page, and did so with the object of removing plaintiff's access to evidence which would enable Plaintiff to demonstrate to Amazon that it was a simple mechanical error. The same was executed by Defendant with the object of maximizing the damage to Plaintiff and thus obtain an unfair advantage over its competitor.

**H. Plaintiff's attempts to resolve the matter**

68. Amazon's notices direct a seller who believes a complaint is mistaken to contact the rights owner and request a retraction. Plaintiff did so.

69. Plaintiff sent electronic mail to John Sopala, the rights owner contact identified in Amazon's notice, on July 18, 2026, twice on July 21, 2026, and on July 27, July 28 and August 6, 2026. Each communication asked Defendant to withdraw the complaint. True and correct copies of that correspondence are attached as Exhibit 8.

70. Plaintiff also telephoned the contact number published for Mr. Sopala. On July 22, 2026 at 1:34 p.m. Plaintiff placed a call of approximately one minute and left a message. On July 28, 2026 at 1:19 p.m. Plaintiff placed a call of approximately fourteen minutes, on which it was transferred to Mr. Sopala.

71. On that call Mr. Sopala said that he did not handle anything with Amazon, that he was not the contact for that area, and that he could not help. He said he would call back with the name of the correct contact. He did not call back.

72. Plaintiff's telephone records show eight further calls placed to that number on the afternoon of July 28, 2026, at 1:38, 1:39, 1:39, 1:40, 1:41, 2:04, 2:05 and 2:10 p.m. None of them connected. A true and correct copy of the call records is attached as Exhibit 9.

73. Plaintiff then called from a different telephone and sought to be transferred to Mr. Sopala or to Defendant's Amazon sales department. Those calls were disconnected. The duration recorded for each is consistent with a call that did not reach a person.

74. Plaintiff obtained a contact number for Joe Lobacz, a manager of Defendant, and on July 29, 2026 at 9:47 a.m. spoke with him for approximately six minutes. Plaintiff explained the circumstances, including that Defendant had purchased and received the accused goods before reporting them.

75. Mr. Lobacz stated that he understood the situation, that he would refer it to Defendant's compliance department, and that he would call back the following day with a resolution. He did not call back.

76. On or about July 30, 2026, Plaintiff telephoned Mr. Lobacz from its business line and left a message. Mr. Lobacz returned that call to Plaintiff's business line after business hours. On that call Mr. Lobacz stated that the matter was out of his hands, that Defendant would not issue a retraction, that he was sorry, and that this was Defendant's strategy for dealing with Amazon sellers.

77. Mr. Lobacz is a manager of Defendant. Russo Power Equipment is an assumed name of Defendant on the records of the Illinois Secretary of State, and the branch through which

Mr. Lobacz was reached is a branch of Defendant. His statements were made within the scope of his employment and concerned a matter within it.

78. Defendant has not withdrawn the complaint.

79. On August 26 and 27, 2026, Plaintiff, through counsel, submitted to Amazon.com a letter of noninfringement addressed to the counterfeiting assertion, a further letter of noninfringement addressed to trademark infringement generally, a submission of bad faith claim, and the sworn declaration of Thomas Edward Kennedy, together with an index of exhibits and twelve exhibits.

80. On August 27, 2026 at 2:08 p.m., Plaintiff, through counsel, served a written demand for withdrawal by electronic mail, addressed to Nicholas Marsico at nmarsico@huckbouma.com, the attorney of record on U.S. Trademark Registration No. 8,007,484, and to John Sopala at jsopala@russopower.com, the rights owner contact identified in Amazon's notice. The demand letter was enclosed as an attachment. The transmittal identified Complaint ID 21178046031, the two accused ASINs, the asserted registration and the counterfeiting category selected. A true and correct copy of the transmittal is attached as Exhibit 10.

81. The demand asked Mr. Marsico to identify other counsel if Defendant was represented by other counsel in the matter. It requested a substantive response by September 5, 2026 and gave the reason for that date. It offered a telephone call in place of further correspondence, gave counsel's direct line, and stated that counsel would make himself available at any time convenient to Defendant, including outside business hours.

82. The September 5, 2026 date was set against a deadline stated in Amazon's own notice. Amazon's July 18, 2026 notice, Exhibit 1, provides that after sixty days the Fulfillment by

Amazon inventory associated with the affected listings is treated as unsuitable and becomes subject to required removal. That period expires on September 16, 2026. The September 5 date was chosen to leave time for a retraction to be submitted and processed before Plaintiff's inventory is destroyed.

83. Defendant did not respond to the August 27, 2026 demand. Neither Defendant, nor Mr. Marsico, nor Mr. Sopala, nor any other person on Defendant's behalf has responded to it. Defendant did not withdraw the complaint, did not identify other counsel, and did not call.

**I. The harm to Plaintiff**

84. Amazon removed the accused listings following the complaint made by Defendant.

85. Within three days of the July 18, 2026 complaint, Plaintiff's Account Health Rating had fallen below 100 and Amazon issued a notice warning of account deactivation.

86. On August 14, 2026 Amazon issued a notice stating that Plaintiff's selling account had been temporarily deactivated and its listings removed because unaddressed violations had caused Plaintiff's Account Health Rating to fall below 100, the threshold for deactivation. The notice identified the cause as a report received from a rights owner alleging that one or more of Plaintiff's listings infringed the intellectual property rights of others in violation of Amazon's Anti-Counterfeiting Policy. The notice stated that funds would not be transferred to Plaintiff but would remain in the account, and that if the required information were not received within nineteen days the account would be deactivated. Plaintiff's sales on the account ceased after August 14, 2026. Nineteen days later, on September 2, 2026, Amazon deactivated Plaintiff's selling account entirely. Plaintiff's Seller Central Policy Compliance page states that the account has been deactivated, and Plaintiff's Account Health Rating stands at zero. A true and correct copy of Amazon's notice of August 14, 2026 and of the resulting deactivation is attached as Exhibit 11.

87. The same report records the collapse that followed the complaint. Product sales for the thirty day period ending in mid August 2026 were $195,500, a decline of forty one percent against the preceding thirty days and of thirty six percent against the same period a year earlier. Product sales for August 2026 to that date were $120,300, a decline of fifty three percent against July 2026 and of fifty two percent against August 2025. Daily product sales on the account fall to zero after August 14, 2026. True and correct copies of those reports are attached as Exhibit 12.

88. The harm is also imminent. Amazon's July 18, 2026 notice provides that after sixty days the Fulfillment by Amazon inventory associated with the affected listings is treated as unsuitable and becomes subject to required removal.

## COUNT I

## DECLARATORY JUDGMENT OF NON COUNTERFEITING AND NONINFRINGEMENT

(28 U.S.C. §§ 2201 and 2202; 15 U.S.C. §§ 1114 and 1116(d))

89. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

90. An actual and justiciable controversy of sufficient immediacy and reality exists between Plaintiff and Defendant concerning whether Plaintiff's sale of Rotary Corporation item 12328 bears a counterfeit of, or otherwise infringes, U.S. Trademark Registration No. 8,007,484.

91. Defendant has affirmatively asserted that registration against Plaintiff's goods, has represented to Amazon.com that those goods bear a counterfeit mark, has obtained the removal of Plaintiff's listings and the deactivation of Plaintiff's account, and has refused Plaintiff's repeated requests to withdraw those assertions.

92. The assertion Defendant made is an assertion of infringement of a registered mark. Under 15 U.S.C. § 1114(1)(a), the use in commerce of a counterfeit of a registered mark in

connection with the sale of goods is an infringement of that mark. Under 15 U.S.C. § 1117(b), the intentional use of a counterfeit mark is an aggravated violation of that same section. The controversy Defendant created is therefore a controversy about trademark infringement, whatever category Defendant selected on Amazon's form.

93. Plaintiff has never used the mark EPR DISTRIBUTION. Plaintiff never applied that mark, or any mark identical with or substantially indistinguishable from it, to any product, package, label or insert.

94. The goods Plaintiff sold under the accused ASINs were genuine Rotary Corporation product, purchased directly from Rotary Corporation by an authorized Rotary dealer, and sold in Rotary's factory sealed packaging bearing Rotary's own mark.

95. The statutory definition of a counterfeit mark under 15 U.S.C. § 1116(d)(1)(B)(i) is therefore not satisfied, and the presumptions of 15 U.S.C. §§ 1057(b) and 1115(a) do not extend to the accused goods.

96. Plaintiff is entitled in the first instance to a declaration that its offering, sale and distribution of Rotary Corporation item 12328 does not constitute the use of a counterfeit mark within the meaning of 15 U.S.C. § 1116(d)(1)(B)(i), because that is the assertion Defendant made and acted upon.

97. Plaintiff is further entitled to a declaration that the same conduct does not infringe U.S. Trademark Registration No. 8,007,484 under 15 U.S.C. § 1114 or otherwise violate any trademark right of Defendant. A declaration confined to counterfeiting would leave Defendant free to reassert the same registration against the same goods under a different label, and would not resolve the controversy between these parties.

## COUNT II

**VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**

(815 ILCS 510/2)

98. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

99. Defendant's statements to Amazon that the offerings of Plaintiff for the goods identified above constituted sale of counterfeit products and Defendant's other false or misleading representation of fact were false representations that disparaged the goods, services, and business of plaintiff in violation of 815 ILCS 510/2(a)(8), and damaged Plaintiff and are actionable as deceptive trade practices.

100. In the course of its business, Defendant represented to Amazon.com that Plaintiff's goods were counterfeit. That representation was false. The goods were genuine Rotary Corporation product bearing Rotary's own mark, and Defendant had received those goods itself before making the representation.

101. Plaintiff has been and is likely to be further damaged by Defendant's deceptive trade practices. Defendant has not withdrawn the complaint, has refused Plaintiff's requests that it do so, and remains able to submit further complaints against Plaintiff at any time.

102. Defendant engaged in the practice willfully and knowing it to be deceptive. Defendant had purchased and received the accused goods before it reported them. Defendant's manager told Plaintiff that Defendant would not retract because the complaint was part of Defendant's plan for dealing with Amazon sellers.

103. Plaintiff is entitled to injunctive relief under 815 ILCS 510/3, and to costs and attorney fees.

**COUNT III**

**TORTIOUS INTERFERENCE WITH CONTRACT**

104. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

105. Plaintiff is party to a valid and enforceable contract with Amazon.com, the Amazon Services Business Solutions Agreement, under which Plaintiff maintains a selling account, offers goods for sale, and receives disbursement of the proceeds of its sales.

106. Defendant was aware of that contractual relationship. Defendant sells on the same marketplace under the same agreement.

107. Defendant intentionally and without justification induced Amazon.com to cease performance of that contract as to Plaintiff, by submitting a complaint asserting that Plaintiff's goods were counterfeit when Defendant knew or should have known that the assertion was false and that its registration did not cover the accused goods, as detailed above.

108. Defendant's conduct was willful and wanton and was undertaken with actual malice or with reckless indifference to Plaintiff's rights. Defendant had purchased and received the accused goods before it reported them. It selected the most severe category Amazon's reporting form makes available, against goods its own registration does not identify. It refused six written requests and several telephoned requests to withdraw. Through a manager it stated that the complaint was part of Defendant's plan for dealing with Amazon sellers, that the matter was out of his hands, and that Defendant would not retract because retraction as to Plaintiff would oblige Defendant to retract as to every other seller against which it had lodged a violation.

109. Plaintiff is accordingly entitled to actual damages and punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct.

**COUNT IV**

**<u>TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE</u>**

110. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

111. Plaintiff had a reasonable expectancy of entering into valid business relationships with purchasers on the Amazon.com marketplace, arising from an established selling account, active listings, an established sales history and an existing customer base.

112. Defendant knew of that expectancy. Defendant is a competitor on the same marketplace, and Defendant purchased from Plaintiff's listings before it complained of them.

113. Defendant purposefully interfered with that expectancy by submitting to Amazon.com a complaint asserting counterfeiting, in the knowledge that the accusation would cause the removal of Plaintiff's listings and, if the account health consequences followed, the deactivation of Plaintiff's account. Defendant's purposeful interference prevented Plaintiff's legitimate expectancy from ripening into valid business relationships with purchasers on the marketplace. Plaintiff's listings were removed, its sales ceased after August 14, 2026, its selling account was deactivated on September 2, 2026, and it can no longer transact with purchasers on the marketplace. Daily product sales on an account that produced $3,691,000 in the preceding twelve months fall to zero after August 14, 2026.

114. Defendant's interference was unjustified for each of the reasons set out above, which Plaintiff realleges here. Defendant asserted a registration that does not identify the accused goods, against goods it had itself purchased and received, in the most severe category the Amazon reporting form offers, refused every request to withdraw, and described the complaint through its manager as part of its plan for dealing with Amazon sellers.

115. Plaintiff has been damaged as a direct and proximate result, in an amount to be proved at trial but believed to be in excess of $1 million, including lost sales and profits, lost sales

rank and search placement, lost customer and supplier relationships, and injury to its business reputation and goodwill.

116. Defendant's conduct was willful and wanton and was undertaken with actual malice or with reckless indifference to Plaintiff's rights, for the reasons set out above. Plaintiff is accordingly entitled to punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct.

## COUNT V

## COMMON LAW UNFAIR COMPETITION

(Pleaded in the alternative to Count III)

117. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

118. The Illinois Uniform Deceptive Trade Practices Act does not displace this claim. Section 2(c) of that Act provides that "[t]his Section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State." 815 ILCS 510/2(c). Plaintiff pleads this additional count in addition to Count III, and pleads it because Section 3 of that Act affords injunctive relief and does not afford damages.

119. Plaintiff and Defendant are competitors in the sale of replacement parts for outdoor power equipment on the Amazon.com marketplace.

120. Defendant engaged in conduct in the course of that trade that is contrary to honest commercial practice. Defendant purchased goods from its competitor, received them, and then reported them to the marketplace operator as counterfeit, asserting a registration that does not identify those goods. Defendant selected the most severe reporting category available. Defendant refused every request to withdraw, gave as its reason that the complaint was part of its plan for

dealing with Amazon sellers and that retraction would oblige it to retract against other sellers it had reported, and then did not answer a written demand served by counsel on the attorney of record for its own registration. Defendant removed its own offers from the accused detail pages so that its own goods could not be compared against the standard it had invoked.

121. Defendant's conduct was to deceive as to the source and authenticity of Plaintiff's goods, and did deceive Amazon.com, which removed Plaintiff's listings and deactivated Plaintiff's account on the strength of the representation.

122. Defendant engaged in that conduct in order to unfairly compete with Plaintiff and for its own commercial advantage, and Plaintiff has been damaged as a direct and proximate result, in an amount to be proved at trial.

123. Defendant's conduct was willful and wanton and was undertaken with actual malice or with reckless indifference to Plaintiff's rights, for the reasons set out above. Plaintiff is accordingly entitled to punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct.

COUNT VI

DEFAMATION

124. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

125. On or about July 18, 2026, Defendant submitted a rights owner complaint to Amazon.com through the Amazon Brand Registry reporting tool. In that complaint Defendant stated that goods offered for sale by Plaintiff under ASINs B0D8BW1BLF and B0D8BVWXLT were counterfeit.

126. Defendant made that statement of and concerning Plaintiff. Defendant located Plaintiff's offers by ASIN, identified Plaintiff as the seller, and selected Plaintiff's offers as the target of the complaint.

127. The statement was a statement of fact and not an expression of opinion. Whether goods bear a counterfeit mark is a matter capable of objective verification. The Amazon reporting tool required Defendant to select a violation category from a closed list of categories, and Defendant selected counterfeit. Defendant supplied the registration number of the '484 Registration as the basis for the accusation and entered an explanation in support of it.

128. The statement was false. The goods Plaintiff offered were genuine aftermarket parts manufactured by Rotary Corporation and acquired by Plaintiff through ordinary commercial channels. They bore no EPR DISTRIBUTION mark, no reproduction of that mark, and no mark substantially indistinguishable from it. See Exhibit 4.

129. Defendant knew the statement was false when it made it. Defendant purchased the goods from Plaintiff on June 29, 2026 under Amazon order 111-3139075-4031444, and Plaintiff shipped them to Defendant on June 30, 2026. Defendant had the goods in its possession before it filed the complaint and could see that they carried no EPR DISTRIBUTION marking of any kind.

130. Defendant published the statement to a third party. Amazon.com received the statement, acted upon it, and recorded it.

131. The publication was not privileged, and any privilege that might otherwise have attached was abused. Defendant made no reasonable investigation before reporting, though the goods were in its hands. Defendant selected the most severe reporting category available to it. Defendant asserted a registration whose identification of goods does not reach the goods it accused. Defendant refused every request that it withdraw the complaint, and gave as its reason that the

complaint was part of its plan for dealing with Amazon sellers and that retraction would oblige it to retract against other sellers it had reported. Defendant did not answer a written demand served by Plaintiff's counsel on the attorney of record for Defendant's own registration. Defendant acted with a direct intention to injure Plaintiff, and in reckless disregard of Plaintiff's rights and of the consequences to Plaintiff.

132. Amazon thereafter created and maintained, within Plaintiff's seller account, a policy violation record characterizing Plaintiff's goods as counterfeit. That characterization was entered falsely, and it was entered as a direct consequence of Defendant's representation to Amazon that the goods were counterfeit. Amazon made no independent determination that the goods were counterfeit. Defendant knew when it submitted its complaint that Amazon would record the accusation in this manner, that the record would remain associated with Plaintiff's account, and that Amazon personnel evaluating Plaintiff's account would rely upon it.

133. The statement is defamatory per se. It imputes to Plaintiff the commission of a crime, trafficking in counterfeit goods being an offense under 18 U.S.C. § 2320. It imputes to Plaintiff a want of integrity in the conduct of Plaintiff's business. It prejudices Plaintiff in its trade as a seller of replacement parts for outdoor power equipment.

134. The statement is not reasonably capable of an innocent construction. In the context in which Defendant made it, on a form that required Defendant to choose among enumerated violation categories, the word counterfeit carries one meaning, which is that the accused goods bear a spurious mark identical with or substantially indistinguishable from a registered mark. Defendant chose that category over every other category the form offered.

135. Because the statement is defamatory per se, damage to Plaintiff's reputation is presumed. Plaintiff has in addition sustained actual damage. Amazon removed Plaintiff's offers

from the accused detail pages, imposed restrictions on Plaintiff's listings, and deactivated Plaintiff's selling account, in each case on the strength of Defendant's representation. Plaintiff has lost sales, lost inventory value, and suffered harm to its standing with Amazon and with its customers, in an amount to be proved at trial.

136. Pleading in the alternative, and only in the event the statement is held not to be actionable per se, Plaintiff has sustained special damages of a pecuniary character consisting of lost revenue from the sales it would have made but for the removal of its offers and the deactivation of its account, together with the cost of inventory rendered unsalable, in an amount to be proved at trial, but not less than $100,000.00.

137. Defendant's conduct was willful and wanton and was undertaken with actual malice or with reckless indifference to Plaintiff's rights, for the reasons set out above. Plaintiff is accordingly entitled to punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

A. Declaring that Plaintiff's offering, sale and distribution of Rotary Corporation item 12328 does not constitute the use of a counterfeit mark within the meaning of 15 U.S.C. § 1116(d)(1)(B)(i), and further declaring that the same conduct does not infringe U.S. Trademark Registration No. 8,007,484 under 15 U.S.C. § 1114 or otherwise violate any trademark right or other right of Defendant;

B. Ordering Defendant to submit to Amazon.com, through the same account, address and channel from which Complaint ID 21178046031 was submitted, or other appropriate channel or method, a complete and unconditional withdrawal and

retraction of that complaint, in the form Amazon requires for a rights owner retraction, and to file with the Court and serve upon counsel for Plaintiff a copy of that submission and of any acknowledgment received from Amazon.com, and further to perform all acts and execute all documents reasonably required or possibly useful in connection with reversal of the damage caused by the unlawful acts of Defendant as complained of above;

C. Enjoining Defendant from submitting any further intellectual property complaint against Plaintiff to Amazon.com or to any other online marketplace without first giving written notice to counsel for Plaintiff identifying the listing, the asserted right and the basis for the assertion, and allowing a stated period for Plaintiff to respond;

D. Enjoining Defendant under 815 ILCS 510/3 from continuing to disparage Plaintiff's goods and business by false or misleading representations of fact;

E. Awarding Plaintiff compensatory damages in an amount to be proved at trial;

F. Awarding Plaintiff punitive damages on Counts III, IV, V and VI in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct;

G. Awarding Plaintiff its costs of suit, and awarding Plaintiff its reasonable attorney fees, on Count I under 15 U.S.C. § 1117(a) as the prevailing party in an exceptional case, and on Count II under 815 ILCS 510/3 upon a finding that Defendant has willfully engaged in a deceptive trade practice;

H. Awarding Plaintiff prejudgment and postjudgment interest as allowed by law; and

I. Granting such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 15, 2026

Respectfully submitted,

**THOMASTON & KENNEDY ENTERPRISES, INC.**

*Lance Liu*

**/s/ Lance Liu**
Lance Liu, Esq.
15 Minuteman Circle
Southbury, CT 06488
Telephone: (203) 706-9536
Lanceliu2000@gmail.com

*Alan Yomtobian*

**/s/ Alan Yomtobian**
Alan Yomtobian, Esq.
Of Counsel
YOMTOBIAN LAW P.C.
14 East 44th Street, 5th Floor
New York, New York 10017
Telephone: 516.234.0789
Alan@YomtobianLaw.com
N.Y. Bar No. 6119580

*Anthony H. Handal*

**/s/ Anthony H. Handal**
Anthony H. Handal, Esq.
Of Counsel
HANDAL & MOROFSKY LLC
83 East Avenue, Suite 308
Norwalk, Connecticut 06851
Telephone: 917.880.0811
Handal@Handalglobal.com

*Attorneys for Plaintiff*

## INDEX OF EXHIBITS

Exhibit 1: Amazon.com Notice of Policy Warning, July 18, 2026 (Complaint ID 21178046031)

Exhibit 2: U.S. Trademark Registration No. 8,007,484, Certificate of Registration

Exhibit 3: Amazon.com listing page, ASIN B0D8BW1BLF

Exhibit 4: Photographs of the front and back of the product and packaging sold under ASIN B0D8BW1BLF and B0D8BVWXLT

Exhibit 5: Amazon.com listing page, ASIN B0D8BVWXLT

Exhibit 6: Rotary Corporation letter of authorization, June 5, 2026

Exhibit 7: Rotary Corporation invoice IN29036384, November 19, 2025

Exhibit 8: Emails from Mr. Kennedy to Mr. Sopala

Exhibit 9: Telephone records

Exhibit 10: Demand for withdrawal and transmittal, August 27, 2026

Exhibit 11: Amazon.com notice of account deactivation, August 14, 2026

Exhibit 12: Amazon Seller product sales reports

# EXHIBIT 1

Amazon.com Notice of Policy Warning, July 18, 2026 (Complaint ID 21178046031)

amazon seller central | TK Outdoor Parts | United States    Search    New Seller Central    EN    Help

Add Products    Explore Services    A-to-z Guarantee Claims    Manage Seller Fulfilled Returns    3P Apps    Edit

‹ Performance notifications

July 18, 2026

**Notice: Policy Warning**

amazon

Subject = Listings deactivated due to inauthenticity notice

Hello ,

Some of your listings on Amazon.com have been reported to offer inauthentic products. Address these product authenticity issues to avoid impact to your account. Review the following for affected listings and next steps.

Why is this happening?
We are taking this action because we received a report from a rights owner that some of your listings may offer inauthentic products. Our authenticity policy requires all products sold on Amazon to be genuine to ensure a safe and trustworthy shopping experience. Selling inauthentic products is prohibited.

To learn more, review our "Anti-Counterfeiting Policy."
https://sellercentral.amazon.com/gp/help/G201165970

Affected listings:
ASIN: B0D8BW1BLF
B0D8BVWXLT
Infringement type: Counterfeit
Trademark asserted: 8007484

How do I reactivate my listings?
Based on your account health performance and history, you may be eligible to request the removal of this violation. Review your eligibility on your Account Health page:
https://sellercentral.amazon.com/performance/account/health/product-policies

Have your listings been deactivated in error?
If you believe that your listings have been deactivated in error, submit documentation such as invoices or letters of authorization or provide details such as Amazon order IDs that demonstrate the authenticity of your products. You can submit this documentation through your Account Health page:
https://sellercentral.amazon.com/performance/account/health/product-policies

Alternatively, contact the rights owner to request a retraction of their notice. Only retractions submitted directly to Amazon by the rights owner will be accepted.
Contact information for the rights owner:
-- John Sopala
-- jsopala@russopower.com
-- Complaint ID: 21178046031

What happens next?
This violation will remain on your Account Health page for 180 days from the posting date unless you successfully appeal this decision or demonstrate that these listings were flagged in error. Deleting your listings will not remove this violation from your Account Health page.
After 60 days, any Fulfillment by Amazon inventory associated with these listings will be considered "unsuitable units" under our fulfillment center policies and must be removed. Removal fees will apply, and removal orders cannot be cancelled once initiated. To learn more about required removals, go to our "Required Removals" help page:
https://sellercentral.amazon.com/help/hub/reference/external/202000820

We're here to help
For additional questions or support, contact Selling Partner Support:
https://sellercentral.amazon.com/help/center

For more information on letters of authorization, visit the "Letter of Authorization" page:
https://sellercentral.amazon.com/help/hub/reference/external/GUF78PCXAMHDY2A6

Amazon Services

FEEDBACK ×

Help | Program Policies | English | Download the Amazon Seller mobile app

© 1999-2026, Amazon.com, Inc. or its affiliates

**EXHIBIT 2**

U.S. Trademark Registration No. 8,007,484, Certificate of Registration

# United States of America

United States Patent and Trademark Office

# EPR DISTRIBUTION

**Reg. No. 8,007,484**

**Registered Nov. 04, 2025**

**Int. Cl.: 7, 9, 11, 12, 22, 35**

**Service Mark**

**Trademark**

**Principal Register**

Russo Hardware, Inc. (ILLINOIS CORPORATION)
9525 W. Irving Park Road
Schiller Park, ILLINOIS 60176

CLASS 7: Parts for outdoor power equipment comprising lawnmowers, snowblowers, power-operated grass trimmers, power-operated blowers, chainsaws, power-operated edgers, pressure washing machines, and small engines not for land vehicles, namely, power-operated grinding wheels; transmissions for machines; machine wheels; spindles; scraper blades; spreader parts in the nature of mechanical spreaders; metal and belt pulleys; mechanical spreaders; power-operated backpack sprayers; gas filters; fuel filters; lawn mower blades; mulching mower blades; blade balancer; carburetor; recoil starter; bearings; ignition coils; stators; spindle bearings; fuel pump; edger blades; belts; blade grinder; roller drum being roller bearings; springs; electric motor starter; gaskets; short blocks being engine blocks; flywheels; pressure switches as parts of machines; fuel cap; bushings; bearing kits comprising engine bearings; hydraulic filters being parts of motors; relays; solenoid valves as machine components; scrapers; paddles; hydraulic pumps; power rake springs being parts of machines; power-operated pruners; wheel motors; trailer brakes being brakes for machines; trimmer heads; hydraulic hoses as components for small industrial engines; snow plow shoes being rubber tracks for snow ploys; pressure washer machine pumps; anti-scalp wheel being machine wheels; brakes for machines; machine paddles; power-operated box scrapers; tiller tines; electric clutches for machines; caster bushings; cylinders; sod cutter blades for machines; carburetors; transmission filters; spindle kits comprising spindles being parts of machines; spindle shafts as parts of machines; crankshafts; throttle cables; ball bearings; scraper bars; shear pins; fuel primer bulbs for machines; grommets; spark plugs; cylinder piston kits comprising piston rings and pistons for machines; power-operated sprays guns; rim sprockets being engine timing component; chain brakes for machines; trip springs; ignition switch; unloader valves as machine components; blade balancers; drive shafts; gear boxes other than for land vehicles; cables being structural parts of machines; trimmer heads for mowing machines; Parts for lawnmowers, namely, metal caster yokes and metal wing nuts

FIRST USE 3-3-2016; IN COMMERCE 3-3-2016

CLASS 9: Parts for lawnmowers and snowblowers, namely, electronic controllers for lawnmowers and snowblowers

FIRST USE 3-3-2016; IN COMMERCE 3-3-2016

Director of the United States
Patent and Trademark Office

**EXHIBIT 2 (continued)**

CLASS 11: Parts for lawnmowers and snowblowers, namely, lights and light bulbs

FIRST USE 3-3-2016; IN COMMERCE 3-3-2016

CLASS 12: Parts for lawnmowers and snowblowers, namely, tires

FIRST USE 3-3-2016; IN COMMERCE 3-3-2016

CLASS 22: Parts for power-operated edgers, namely, nylon grass and weed trimmer line

FIRST USE 3-3-2016; IN COMMERCE 3-3-2016

CLASS 35: Retail store services and online retail store services featuring parts and accessories for outdoor power equipment; retail store services and online retail store services featuring parts and accessories for lawnmowers, snow plows, salt spreaders, sprayers, shovels, storage containers, tractors, utility vehicles, front-end loaders, backhoes, rotary tillers, compactors, snowblowers, snow removal equipment, yard tools, trimmers, blowers, chainsaws, brush cutters, edgers, power cutters, pruners, augers, pressure washers, trailers, small engines, landscaping tools and equipment

FIRST USE 3-3-2016; IN COMMERCE 3-3-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "DISTRIBUTION"

SER. NO. 98-200,560, FILED 09-27-2023

# EXHIBIT 2 (continued)

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Page: 3 of 3 / RN # 8007484

**EXHIBIT 3**

Amazon.com listing page, ASIN B0D8BW1BLF



2PK Air Filter Replacement for Makita 424789-0 315-173-010 EK6101 PC-6114 Power Cutters

**ASIN:** B0D8BW1BLF

**Amazon Sales Rank:** 1651652

**Lowest Price:** -- | Calculate revenue

0 Used & New Offers

Copy listing

- This product has other listing limitations. Learn more
- **Used, Collectible, Refurbished conditions:** You cannot list the product in this condition.

Home Orders Products Inventory Menu

**EXHIBIT 4**

Photographs of the front and back of the product and packaging sold under ASIN B0D8BW1BLF



**EXHIBIT 5**

Amazon.com listing page, ASIN B0D8BVWXLT

Share feedback



Air Filter Replacement for 424789-0 315-173-010 EK6101 PC-6114 Power Cutters

**ASIN:** B0D8BVWXLT

**Amazon Sales Rank:** 1612304

**Lowest Price:** -- | Calculate revenue

0 Used & New Offers

Copy listing

- This product has other listing limitations. Learn more
- **Collectible, Refurbished conditions:** We are currently not accepting applications for this product category. To maintain a safe and trustworthy shopping experience, we restrict certain products from being listed or sold on Amazon. If the ability to list this product changes, you will be able to sell by clicking “Sell this product” or “Apply to Sell”. Learn more

Home Orders Products Inventory Menu

**EXHIBIT 6**

Rotary Corporation letter of authorization, June 5, 2026

rotary®

CORPORATE HEADQUARTERS
Rotary Corporation

June 5, 2026

To Whom It May Concern:

TK Tire & Auto (712060) is an active Rotary dealer in good standing and purchases Rotary products directly from Rotary Corporation.

Rotary Corporation does not control, monitor, authorize, or restrict the specific resale channels or platforms, including but not limited to Amazon, utilized by its dealers following the completion of a sale.

Rotary maintains Minimum Advertised Pricing (MAP) policies applicable to certain products. Dealers are expected to comply with these policies where applicable; however, such policies govern advertised pricing only and do not constitute resale price maintenance or restrict the final resale price.

This letter is provided for verification purposes only and does not grant exclusivity, distribution rights, or authorization to represent Rotary Corporation beyond the scope of standard dealer relationships.

Should additional information or confirmation be required, please contact Rotary Corporation directly.

Sincerely,

Katey Waters

Katey Waters
Sales Administration

Address 801 W. Barnard St
Glennville, Georgia 30427

Contact Phone (912) 654-3433
Fax (912) 654-3945

www.rotarycorp.com

# EXHIBIT 7

Rotary Corporation invoice IN29036384, November 19, 2025

Page 1 of 3

****This is our invoice within the specified timeframe.**

Rotary Corporation
PO Box 745703
Atlanta, GA 30374-5703
United States of A

**Invoice Num:** IN29036384
**Invoice Date:** 11/19/2025
***Inquiries?*** Tel: (800) 841-3989

**PO Num:** SPRINGORDER
**Order #:** 6902335
**Ordered:** 09/11/2025
**Customer:** 712060

**PLEASE NOTE:** *A late charge of 1.5% per month will be added to all accounts 30 days past due*

| Order Total | Discount | Sales Tax | Freight | Svc Chg | Total (USD) |
|---|---|---|---|---|---|
| 79746.54 | 9569.58 | | | | [redacted] |

NEVER change wire/ACH payment instructions based on email communication only! ALWAYS verify by phone with a known Rotary contact at a prior established phone number!

VIEW INVOICES ONLINE!
MAKE PAYMENTS ONLINE!!
We Accept e-CHECKS
Visit www.ROTARYCORP.com today

Prices reflect 20% discount
SPRING ORDER - SHIP AS LATE AS POSSIBLE PER DM

| COO | Line # | Vendor Part# | Reference Part# | Quantity (Eaches) Ordered | Shipped | Canceled | Description (O.E.M. references for ID purposes ONLY) | Unit Price | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | 13464 | | 2 | 2 | | GRASSHOPPER BLADE 21" X 1/2" | [redacted] | [redacted] |
| | 2 | 17389 | | 2 | 2 | | CHAINSAW OIL DRIP TRAY <45CC | | |
| | 4 | 7241 | | 12 | 12 | | VARIATOR BEARING 9/16 X 3/4 | | |
| | 5 | 11830 | | 4 | 4 | | KWIK LOADER TRIMMER HEAD | | |
| | 6 | 12734 | | 12 | 12 | | SPINDLE ASSEMBLY FOR AYP(6 PK) | | |
| | 7 | 11240 | | 18 | 18 | | EXMARK BLADE 16-1/4" X 15/16" | | |
| | 9 | 14422 | | 20 | 20 | | FOAM PRE-FILTER FOR B&S | | |
| | 10 | 765 | | 8 | 8 | | STEEL V-BELT PULLEY | | |
| | 11 | 9376 | | 12 | 12 | | IDLER PULLEY FOR AYP | | |
| | 12 | 6300 | | 96 | 96 | | REPLACEMENT UNIVERSAL BLADE | | |
| | 13 | 13091 | | 8 | 8 | | SPINDLE ASSEMBLY HUSQVARNA | | |
| | 14 | 3401 | | 72 | 72 | | BOBCAT BLADE 18"X 5/8" | | |
| | 15 | 14078 | | 18 | 18 | | HUSQVARNA BLD 19" X 5/8" | | |
| | 16 | 10665 | | 400 | 114 | | CASTER YOKE GREASE CAP | | |
| | 17 | 10373 | | 8 | 8 | | HUSTLER BLADE 21" X 5/8" | | |
| | 18 | 14105 | | 200 | 200 | | EXTENSION SPRING FOR HUSQVARNA | | |
| | 20 | 16417 | | 12 | 12 | | BLADE 18-1/2" X 5 POINT STAR | | |
| | 21 | 11279 | | 24 | 24 | | EXMARK BLADE 16-1/4" | | |
| | 22 | 15650 | | 48 | 48 | | OIL FILTER 24-PACK | | |
| | 23 | 15649 | | 48 | 48 | | OIL FILTER 24-PACK | | |
| | 24 | 15648 | | 48 | 48 | | OIL FILTER 24-PACK | | |
| | 25 | 15647 | | 48 | 48 | | OIL FILTER 24-PACK | | |
| | 26 | 9361 | | 8 | 8 | | TRANSMISSION FILTER / EXMARK | | |
| | 27 | 16184 | | 48 | 9 | | BLADE 16-3/4" X 5 POINT STAR | | |
| | 28 | 5841 | | 20 | 20 | | IN-LINE CUT-OFF VALVE FOR B&S | | |

**CONTINUED ON NEXT PAGE**
Page: 1

**PLEASE DETACH ALONG PERFORATION AND RETURN WITH YOUR REMITTANCE**

Rotary Corporation
PO Box 745703
Atlanta, GA 30374-5703
United States of A

**Customer #:** 712060

**Sold To:**
TK TIRE & AUTO (CC)
1041 FAIRGROUNDS RD
MADISON, GA 30650
United States of America

**Invoice Num:** IN29036384
**Invoice Date:** 11/19/2025
**Pay Terms:** S026 Spring Exclusive Max Apr 10/May 10/June 10
**Sales Rep:** CHRIS SIPOS
**Incoterms:**

**PO Num:** SPRINGORDER
**Order #:** 6902335
**Order Date:** 09/11/2025
**Carrier:** BEST PARCEL CARRIER
**INVOICE TOTAL:** [redacted]
**Amount Enclosed**

**Shipped To:**
TK TIRE & AUTO
1041 FAIRGROUND RD
MADISON, GA 30650
United States of America

# EXHIBIT 7 (continued)

Page 2 of 3

****This is our invoice within the specified timeframe.**

Rotary Corporation
PO Box 745703
Atlanta, GA 30374-5703
United States of A

**Invoice Num:** IN29036384
**Invoice Date:** 11/19/2025
**PO Num:** SPRINGORDER
**Order #:** 6902335
**Ordered:** 09/11/2025

*Continued from previous page*

| COO | Line # | Vendor | Customer Part# | Quantity (Eaches) Ordered | Shipped | Canceled | Description (O.E.M. references for ID purposes ONLY) | Unit Price | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | 29 | 11557-6 | | 20 | 20 | | COPPERHEAD 6 PACK BLADE 11557 | [redacted] | [redacted] |
| | 30 | 14853 | | 70 | 70 | | FOAM PRE-FILTER FOR KOHLER | [redacted] | [redacted] |
| | 31 | 15150 | | 20 | 20 | | ELECTRIC STARTER FOR KAWASAKI | [redacted] | [redacted] |
| | 32 | 15410 | | 8 | 8 | | FLAT IDLER PULLEY, 5-1/4" | [redacted] | [redacted] |
| | 34 | 14293 | | 24 | 24 | | GAS CAN 1+ GAL MIDWEST | [redacted] | [redacted] |
| | 35 | 15454 | | 120 | 120 | | BLADE 17-1/4" X 6 POINT STAR | [redacted] | [redacted] |
| | 36 | 14472 | | 12 | 12 | | V-IDLER PULLEY | [redacted] | [redacted] |
| | 37 | 16117 | | 4 | 4 | | STEERING SHAFT(D) | [redacted] | [redacted] |
| | 38 | 6489 | | 24 | 24 | | HUSQVARNA BLADE 16-3/16"X.950" | [redacted] | [redacted] |
| | 39 | 12926 | | 12 | 12 | | SPINDLE SHAFT ONLY FOR MTD | [redacted] | [redacted] |
| | 40 | 10434 | | 4 | 4 | | DRIVE BELT FOR JOHN DEERE | [redacted] | [redacted] |
| | 41 | 16518 | | 4 | 4 | | DECK BELT FOR HUSQVARNA | [redacted] | [redacted] |
| | 43 | 6296 | | 72 | 72 | | REPLACEMENT UNIVERSAL BLADE | [redacted] | [redacted] |
| | 44 | 14599 | | 10 | 10 | | ZONE CONTROL CABLE | [redacted] | [redacted] |
| | 45 | 8 | | 2 | 2 | | E-CLIP ASST | [redacted] | [redacted] |
| | 46 | 11592 | | 200 | 200 | | SPINDLE SHAFT W/BEARING | [redacted] | [redacted] |
| | 47 | 11841 | | 240 | 240 | | PAPER AIR FILTER FOR KOHLER | [redacted] | [redacted] |
| | 48 | 11865 | | 240 | 240 | | SAFETY FILTER ELEMENT/ KOHLER | [redacted] | [redacted] |
| | 49 | 13652 | | 50 | 50 | | FUEL FILTER | [redacted] | [redacted] |
| | 50 | 10677 | | 10 | 10 | | SOLENOID STARTER | [redacted] | [redacted] |
| | 51 | 5089 | | 16 | 16 | | PREMIUM BELT 1/2" X 56" | [redacted] | [redacted] |
| | 52 | 3434 | | 900 | 900 | | SCAG BLADE 21"X 5/8" | [redacted] | [redacted] |
| | 53 | 5064 | | 4 | 4 | | PREMIUM BELT 1/2" X 31" | [redacted] | [redacted] |
| | 54 | 12318 | | 12 | 12 | | DECK BELT FOR HUSTLER | [redacted] | [redacted] |
| | 55 | 3943 | | 16 | 16 | | UTILITY JUG 5.5 GAL. (RED) | [redacted] | [redacted] |
| | 56 | 3956 | | 8 | 8 | | UTILITY JUG 3 GAL.(RED) | [redacted] | [redacted] |
| | 57 | 13459 | | 12 | 12 | | NO-SPILL 1-1/4 GALLON GAS CAN | [redacted] | [redacted] |
| | 58 | 14295 | | 12 | 12 | | GAS CAN 5 GAL MIDWEST | [redacted] | [redacted] |
| | 59 | 6294-6 | | 20 | 20 | | COPPERHEAD 6 PACK BLADE 6294 | [redacted] | [redacted] |
| | 60 | 10131 | | 40 | 40 | | COMPOSITE V-BELT IDLER PULLEY | [redacted] | [redacted] |
| | 61 | 10133 | | 12 | 12 | | COMPOSITE V-BELT IDLER PULLEY | [redacted] | [redacted] |
| | 62 | 10128 | | 2 | 2 | | COMPOSITE V-BELT IDLER PULLEY | [redacted] | [redacted] |
| | 63 | 9374 | | 900 | 900 | | HEX HEAD SELF-TAPPING SCREW | [redacted] | [redacted] |
| | 65 | 10301 | | 40 | 40 | | WHEEL KIT W/HDWE FOR EXMARK | [redacted] | [redacted] |
| | 66 | 10362 | | 20 | 20 | | CUB CADET BLADE 19"X 3/4" | [redacted] | [redacted] |
| | 67 | 13793 | | 70 | 70 | | TRIMMER HEAD BUMP KNOB | [redacted] | [redacted] |
| | 68 | 13178 | | 200 | 200 | | V-IDLER PULLEY 3/8 X 3-1/2" | [redacted] | [redacted] |
| | 69 | 13179 | | 150 | 150 | | FLAT IDLER PULLEY 3/8 X 3-1/2" | [redacted] | [redacted] |
| | 70 | 3403-6 | | 30 | 30 | | COPPERHEAD 6 PACK BLADE 3403 | [redacted] | [redacted] |
| | 73 | 13129 | | 60 | 60 | | TORO BLADE 21-5/8" X 5/8" | [redacted] | [redacted] |
| | 74 | 10648 | | 48 | 48 | | G4 D.O.T. REACHER 48" | [redacted] | [redacted] |
| | 75 | 10640 | | 72 | 72 | | G4 D.O.T. REACHER 40" | [redacted] | [redacted] |
| | 76 | 10432 | | 168 | 150 | | G4 D.O.T. REACHER 32" | [redacted] | [redacted] |
| | 77 | 6303 | | 1500 | 1500 | | REPLACEMENT UNIVERSAL BLADE | [redacted] | [redacted] |
| | 78 | 11248 | | 500 | 500 | | EXMARK BLADE 20-1/2"X 15/16 | [redacted] | [redacted] |
| | 79 | 11224 | | 500 | 500 | | EXMARK BLADE 20-1/2" X 15/16" | [redacted] | [redacted] |
| | 80 | 12920 | | 12 | 12 | | JOHN DEERE BLADE 17" X .678" | [redacted] | [redacted] |
| | 81 | 1031 | | 24 | 24 | | MTD BLADE 21-3/16"X 6 PT. STAR | [redacted] | [redacted] |
| | 82 | 10169 | | 100 | 100 | | DRIVE DISC W/LINER FOR SNAPPER | [redacted] | [redacted] |
| | 83 | 14442 | | 48 | 48 | | D.CHOPPER BLD 21-3/8" | [redacted] | [redacted] |
| | 84 | 6783 | | 300 | 300 | | B&S OIL DRAIN VALVE ASSEMBLY | [redacted] | [redacted] |
| | 85 | 5090 | | 10 | 10 | | PREMIUM BELT 1/2" X 57" | [redacted] | [redacted] |
| | 86 | 15366 | | 20 | 20 | | PAPER CARTRIDGE AIR FILTER | [redacted] | [redacted] |
| | 87 | 5222 | | 11 | 11 | | PREMIUM BELT 5/8" X 95" | [redacted] | [redacted] |
| | 88 | 14208 | | 72 | 72 | | BLADE COPPERHEAD 16-1/4" | [redacted] | [redacted] |
| | 89 | 5026 | | 8 | 8 | | PREMIUM BELT 3/8" X 43" | [redacted] | [redacted] |
| | 90 | 6170 | | 8 | 8 | | WALKER BLADE 25-1/16"X 5/8" | [redacted] | [redacted] |
| | 91 | 6843 | | 8 | 8 | | DECK DRIVE BELT FOR MTD | [redacted] | [redacted] |
| | 92 | 12124 | | 120 | 120 | | HUSQVARNA BLADE 18"X 5 PT.STAR | [redacted] | [redacted] |
| | 93 | 11060 | | 60 | 60 | | JACKSHAFT SPINDLE BEARING | [redacted] | [redacted] |
| | 94 | 14939 | | 4 | 4 | | PUMP DRIVE BELT 1/2" X 50-3/4" | [redacted] | [redacted] |
| | 95 | 15315 | | 10 | 10 | | BLADE 21-1/2" X .715" | [redacted] | [redacted] |
| | 96 | 14152 | | 10 | 10 | | BLADE 21" X 3/8" SNAPPER(TI) | [redacted] | [redacted] |
| | 98 | 9810 | | 30 | 30 | | AYP BLADE 21"X 5/8" | [redacted] | [redacted] |
| | 99 | 1098 | | 20 | 20 | | SNAPPER BLADE 28" X 1-1/16" | [redacted] | [redacted] |
| | 101 | 17380 | | 8 | 1 | | HYDRO FILTER FOR HUSTLER | [redacted] | [redacted] |

**CONTINUED ON NEXT PAGE**

Page: 2

2 of 3

# EXHIBIT 7 (continued)

Page 3 of 3, line 103, vendor part 12328, AIR FILTER FOR MAKITA

**This is our invoice within the specified timeframe.**

Rotary Corporation
PO Box 745703
Atlanta, GA 30374-5703
United States of A

**Invoice Num:** IN29036384
**Invoice Date:** 11/19/2025
*Continued from previous page*

**PO Num:** SPRINGORDER
**Order #:** 6902335
**Ordered:** 09/11/2025

| COO | Line # | Vendor | Customer Part# | Quantity (Eaches) Ordered | Shipped | Canceled | Description (O.E.M. references for ID purposes ONLY) | Unit Price | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | 102 | 8935 | | 10 | 10 | | FUEL CAP FOR MTD | [redacted] | [redacted] |
| *** | 103 | 12328 | | 10 | 10 | | AIR FILTER FOR MAKITA *** | | |
| | 104 | 3319 | | 30 | 30 | | SOLENOID FOR MURRAY | | |
| | 105 | 10485 | | 1 | 1 | | V-BELT FOR JOHN DEERE | | |
| | 106 | 16509 | | 100 | 100 | | AIR FILTER WITH PRE-FILTER | | |
| | 107 | 12758 | | 50 | 50 | | AIR FILTER FOR KAWASAKI | | |
| | 108 | 12797 | | 25 | 25 | | PRE FILTER KAWASAKI | | |
| | 109 | 5225 | | 6 | 6 | | PREMIUM BELT 5/8" X 98" | | |
| | 110 | 15697 | | 40 | 40 | | SPINDLE PULLEY | | |
| | 111 | 7180 | | 150 | 150 | | SPINDLE PULLEY FOR AYP | | |
| | 112 | 11590 | | 20 | 20 | | SPINDLE ASSEMBLY FOR AYP | | |
| | 113 | 12298 | | 20 | 20 | | IDLER PULLEY FOR HUSTLER | | |
| | 114 | 2189 | | 10 | 10 | | FLAT IDLER PULLEY FOR GRAVELY | | |
| | 115 | 10149 | | 10 | 10 | | COMPOSITE FLAT IDLER PULLEY | | |
| | 116 | 12276 | | 2 | 2 | | IDLER PULLEY FOR CUB CADET | | |
| | 117 | 10156 | | 20 | 20 | | COMPOSITE FLAT IDLER PULLEY | | |
| | 118 | 10150 | | 150 | 150 | | COMPOSITE FLAT IDLER PULLEY | | |
| | 120 | 156 | | 100 | 100 | | O-RING NO-114 | | |
| | 121 | 12710 | | 8 | 8 | | ELECTRIC STARTER FOR KOHLER | | |
| | 123 | 9369 | | 25 | 25 | | RELAY FOR AYP | | |
| | 124 | 14021 | | 5 | 5 | | EXTENSION SPRING FOR EXMARK | | |
| | 125 | 10292 | | 24 | 24 | | JOHN DEERE BLADE 18 7/8"X .80 | | |
| | 128 | 17224 | | 60 | 60 | | BLADE 17-1/4" X DIAMOND C.H. | | |
| | 130 | 17225 | | 60 | 60 | | BLADE 18-5/8" X DIAMOND C.H. | | |
| | 131 | 12733 | | 48 | 48 | | HUSTLER BLADE 18-1/2" X 5/8" | | |
| | 132 | 2173 | | 48 | 48 | | BOBCAT BLADE 18" X 5/8" | | |
| | 133 | 2006 | | 40 | 40 | | SNAPPER BLADE 20-3/4" X 3/8" | | |
| | 135 | 12378 | | 30 | 30 | | SPINDLE PULLEY FOR AYP | | |
| | 136 | 16061 | | 150 | 150 | | PTO SWITCH | | |
| | 137 | 16052 | | 200 | 200 | | SPINDLE PULLEY | | |
| | 138 | 11821 | | 12 | 12 | | TORO BLADE 21.675" X 5/8" | | |
| | 139 | 15112-6 | | 6 | 6 | | COPPERHEAD 6 PACK BLADE 15112 | | |
| | 140 | 14788 | | 10 | 10 | | TORO BLADE 21-5/8" X 5/8" | | |
| | 141 | 3329 | | 21 | 21 | | BOBCAT BLADE 25"X 5/8" | | |
| | 143 | 5060 | | 2 | 2 | | PREMIUM BELT 1/2" X 27" | | |
| | 145 | 11813 | | 20 | 20 | | FUEL FILTER FOR POULAN | | |
| | 146 | 10772 | | 20 | 20 | | SOLENOID STARTER - UNIVERSAL | | |
| | 147 | 11014 | | 6 | 6 | | SPINDLE ASSEMBLY FOR AYP | | |
| | 148 | 9883 | | 60 | 60 | | SCAG BLADE 24-1/2"X 5/8" | | |
| | 149 | 12362 | | 9 | 9 | | TORO BLADE 17-1/2" X 5/8" | | |
| | 150 | 14546 | | 2 | 2 | | MTD PTO SWITCH | | |
| | 151 | 5021 | | 2 | 2 | | PREMIUM BELT 3/8" X 38" | | |
| | 152 | 2235 | | 8 | 8 | | VENTED FUEL CAP FOR SNAPPER | | |
| | 153 | 15957 | | 4 | 4 | | NOSE ROLLER ROD FOR HUSQ | | |
| | 155 | 16336 | | 3 | 3 | | DECK BELT FOR CUB CADET | | |
| | 156 | 10436 | | 2 | 2 | | DRIVE BELT FOR JOHN DEERE | | |
| | 157 | 6930 | | 20 | 20 | | DRIVE PLATE W/BUSHING FOR | | |
| | 158 | 8364 | | 50 | 50 | | CARBURETOR DIAPHRAGM FOR B&S | | |
| | 159 | 10315 | | 6 | 6 | | TRIMMER LINE .155 5# SPOOL | | |
| | 160 | 10228 | | 10 | 10 | | FLANGED NUT FOR MTD | | |
| | 161 | 6298 | | 36 | 36 | | REPLACEMENT UNIVERSAL BLADE | | |
| | 162 | 12043 | | 100 | 100 | | CARBURETOR FLOAT BOWL GASKET | | |
| | 163 | 11229 | | 60 | 60 | | EXMARK BLADE 24-1/2" X 15/16" | | |
| | 164 | 13739 | | 4 | 4 | | FLAT IDLER PULLEY | | |
| | 165 | 5085 | | 2 | 2 | | PREMIUM BELT 1/2" X 52" | | |
| | 166 | 15091 | | 100 | 100 | | ROTARY BAR & CHAIN OIL | | |
| | 167 | 15028 | | 8 | 8 | | FUEL CAP FOR HUSQVARNA | | |
| | 168 | 12271 | | 1 | 1 | | ENGINE PULLEY FOR AYP | | |
| | 169 | 6692 | | 2 | 2 | | PAPER AIR FILTER FOR HONDA | | |
| | 170 | 9873 | | 600 | 600 | | SPARK PLUG NGK BPR4ES | | |
| | 171 | 1435 | | 100 | 100 | | B&S FLYWHEEL KEY (ZINC) | | |
| | 172 | 10875 | | 12 | 12 | | FUEL PUMP FOR KAWASAKI | | |
| | 173 | 14299 | | 100 | 100 | | BREATHER TUBE GROMMET | | |
| | 174 | 14800 | | 100 | 100 | | BREATHER TUBE GROMMET | | |
| | 175 | 15903 | | 6 | 6 | | BOWL GASKET FOR NIKKI CARB | | |
| | 176 | 15991 | | 200 | 200 | | BLADE ADAPTER | | |

3 of 3

# EXHIBIT 8

Amazon order 111-3139075-4031444, June 29, 2026, with packing slip and shipment record

Seller Central order record



## EXHIBIT 8 (continued)

Shipment record, June 30, 2026, tracking 382346997705

Shipments

☐ Hide Draft/Failed Shipments

| ☐ | Date | Shipper | Weight | Dimensions | Method | Cost | Insurance | Tracking number | Status | Type | Manifested | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☑ | Tue Jun 30 11:18am | Jennifer | 7 lb(s) | 12x8x6 in | Amazon FedEx Ground Economy (Tender to FedEx only) | $7.80 | $0.00 | 382346997705 | Created | Shipment | ⊘ | |

| | Name | Quantity |
|---|---|---|

**EXHIBIT 8 (continued)**

Packing slip



Mon Jun 29 2026
#111-3139075-4031444

111-3139075-4031444

(12 x 8 x 6 in)

Store:
TK Outdoor Parts
1041 Fairground Rd
Madison, GA 30650
US
706-342-4046

Customer:
Angie Serritella
1001 N RANDALL RD
ELGIN IL 60123-2319 US
r6jh74t92mmpnmy@marketplace.amazon.com

**Shipped:** Tue Jun 30 2026
**Method:** Standard

| Name | SKU | Location | Quantity |
|---|---|---|---|
| Kawasaki Genuine 49019-0031 Fuel Filter Fits All 730V 850V EFI Engine Models | 49019-0031 | KAW | 1 |
| New Stens Inner Air Filter 100-780 Compatible with KAW 11013-7045 ROT 11865 Kubota L2501D, L2501F, L3200DT/F/H, L3300DT, L3400DT, L8419 and L8439, and L2800, L2900, L3240, L3450, L3560, L3600, L3700 K7561-82820, R1411-42280 | 100-780 | KAW R2/S7 UPSTAIRS | 1 |
| New Stens Air Filter 102-305 for kaw 11013-7044 Kohler 25 083 01-S, 30-055 , 11841 . 9583 | 102-305 | KOHLER | 1 |
| ROTARY 12861 BULKJ PK 15647-OIL FILTER 52-050-02-S / 83-013 STN 120-485 | 12861 | O/S UPSTAIRS | 1 |
| Kawasaki GENUINE PART K-Tech 10W-30 Engine Oil Quart #99969-6081 | 99969-6081 | OIL KAW | 2 |
| NGK BPR4ES Lawn & Garden Equipment Engine Spark Plug Genuine Original Equipment Manufacturer (OEM) part | BPR4ES | SPARK PLUG | 2 |
| AIR FILTER FOR MAKITA | 12328 | MIKITA R1/S4/B1 | 1 |
| AIR FILTER FOR MAKITA | 12328 | MIKITA R1/S4/B1 | 2 |

**Subtotal:** $89.37
**Discount:** $0.00
**Shipping:** $0.00
**Tax:** $7.59
**Total:** $96.96

Thank you for your business!

**Exhibit 8**

Email Records between Mr. Kennedy and Mr. Sopala

Request to Resolve Counterfeit Claim Complaint ID # 21178046031

**Eddie Kennedy** Sat, Jul 18, 10:25 PM
Mr. Sopala, I am reaching out regarding a counterfeit claim associated with ASIN B0D8BW1BLF (2PK Air Filter Replacement for Makita) and ASIN B0D8BVWXLT (Air Fil

**Eddie Kennedy** Tue, Jul 21, 12:55 PM
Mr. Sopala - At the request of Amazon, I am contacting you again regarding the information below in an attempt to resolve this issue. We have followed the Amazo

**Eddie Kennedy** Tue, Jul 21, 7:27 PM
Hi - It's Eddie again. Amazon has advised us to email this address 3-4 times a day regarding this issue until this is resolved, as well contact the company phon

**Eddie Kennedy** Mon, Jul 27, 2:58 PM
We are reaching out again regarding this issue. If there is someone else we should contact please let us know who that is. Thanks so much.

**Eddie Kennedy** Tue, Jul 28, 4:21 PM
Mr. Sopala - We are actively trying to reach someone who can help us with this issue related to the claim identified in the for line of this email. Please let u

**Eddie Kennedy** <tkstire@gmail.com> Thu, Aug 6, 2:48 PM
to jsopala

Good afternoon - We are still trying to contact you regarding this issue. If you are no longer the contact person for this issue, please direct us to the appropriate contact. Thanks so much.

...

Reply | Forward

**EXHIBIT 9**

Telephone records

Calls to 224-268-3035, the number published for John Sopala



**EXHIBIT 9 (continued)**

Call to 847-794-8823, Joe Lobacz, July 29, 2026 at 9:47 a.m., six minutes



# EXHIBIT 10

Demand for withdrawal and transmittal, August 27, 2026

**Russo Hardware, Inc. and TK Outdoor Parts | Amazon Complaint ID 21178046031 | Demand for Withdrawal | Settlement Communication under FRE 408**

AY Alan Yomtobian

To: nmarsico@huckbouma.com; jsopala@russopower.com

Reply | Reply all | Forward

Thu 8/27/2026 2:08 PM

Demand_Letter__Russo_Hard...
4 MB

Mr. Marsico and Mr. Sopala,

I represent Thomason & Kennedy Enterprises, Inc., which sells on Amazon.com as TK Outdoor Parts. Attached is a letter concerning the infringement complaint Russo Hardware, Inc. submitted to Amazon on July 18, 2026 against ASINs B0D8BW1BLF and B0D8BVWXLT, asserting U.S. Registration No. 8,007,484 and selecting counterfeiting as the category of infringement.

Mr. Marsico, I have addressed you as attorney of record on that registration. If Russo Hardware is represented by other counsel in this matter, please tell me who that is and I will direct everything through them.

We ask for a substantive response by **September 5, 2026**. That date is not arbitrary. Amazon's July 18 notice provides that after sixty days the Fulfillment by Amazon inventory associated with the affected listings is treated as unsuitable and subject to required removal, and that period expires on September 16. The September 5 date leaves time for a retraction to be filed and processed before inventory is destroyed.

My client attempted to reach Russo Hardware by telephone approximately six times and in writing before instructing this firm, and received no response. I would rather resolve this on a telephone call than on paper. My direct line is 516.234.0789 and I will make myself available at whatever time suits you, including outside business hours. If you need additional time for a reason connected to the September 16 date, call me and I expect we can work it out.

This communication is made in furtherance of settlement and is subject to Federal Rule of Evidence 408.

Best,

Alan Yomtobian

Alan Yomtobian, Esq. | Founder
Yomtobian Law - Protecting Ideas. Powering Innovation.
www.YomtobianLaw.com
(516) 234-0789

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and any attachments or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system. Thank You.

Reply | Reply all | Forward

# EXHIBIT 11

Amazon.com notice of account deactivation, August 14, 2026

amazon seller central | TK Outdoor Parts | United States | Search | New Seller Central | EN | Help

Add Products | Explore Services | A-to-z Guarantee Claims | Manage Seller Fulfilled Returns | 3P Apps | Edit

< Performance notifications

August 14, 2026

**Your Amazon seller account has been temporarily deactivated**

amazon

Hello TK Outdoor Parts,
Your Amazon seller account has been temporarily deactivated and your listings have been removed due to unaddressed violations that have significantly lowered your Account Health Rating. Continue to ship open orders and respond to buyer inquiries to avoid further impact to your account.

Funds will not be transferred to you but will stay in your account while we work with you to address this issue in accordance with our Funds withholding policy.

**Why did this happen?**
We took this action because there are unaddressed violations on your selling account which have caused your Account Health Rating (AHR) to fall below 100, the threshold for deactivation:

- We have received a report from a rights owner alleging that one or more of your listings may be infringing on the intellectual property rights of others. Infringing on the intellectual property rights of others is a violation of our Amazon Anti-Counterfeiting Policy. According to this policy sellers listing content must not infringe on the intellectual property of others. For more information, go to the policy.

**How do I reactivate my account?**
To reactivate your account, you will need to resolve the violations mentioned above by following the steps provided. You can also find the actions needed to resolve these violations by referencing the Priority Actions section on your Account Health page.

Your account will be considered for reactivation when applicable compliance, regulatory, and/or policy violation(s) have been successfully resolved.

**Has your account been deactivated in error?**
If you believe that the violation(s) that caused your account deactivation are incorrect, submit evidence or documentation demonstrating that your account has not violated Amazon's policies and we will investigate your concern. To do so, follow the instructions on your Account Health page in Seller Central.

**What happens if I do not submit the required information?**
If we do not receive the required information within 19 days, your account will be deactivated.

**We're here to help.**
If you have additional questions, please contact Seller Support or if you have the 'Contact Us' button, go to your Account Health page to contact an Account Health Specialist.

Amazon Services

FEEDBACK ×

Report an issue with this email

If you have any questions visit: Seller Central

To change your email preferences visit: Notification Preferences

Copyright 2026 Amazon, Inc, or its affiliates. All rights reserved.
Amazon.com, 410 Terry Avenue North, Seattle, WA 98109-5210

Help | Program Policies | English | Download the Amazon Seller mobile app

© 1999-2026, Amazon.com, Inc. or its affiliates

**EXHIBIT 12**

Amazon Seller product sales reports

Last 12 months



**EXHIBIT 12 (continued)**

This month



**EXHIBIT 12 (continued)**

Last 30 days

